UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ANDREA SHAW, et al.,**
Plaintiffs,

v.

**AMERICAN ACADEMY OF PEDIATRICS,**
Defendant.

RECEIVED
MAILROOM
SEP 18 2026
Angela D. Caesar, Clerk
U.S. District & Bankruptcy Courts
for the District of Columbia

Civil Action No. **1:26-cv-00171-TJK**

---

# MOTION FOR LEAVE TO FILE AND PROPOSED BRIEF OF AMICUS CURIAE BRANDON MICHAEL HAYES, PRESIDENT OF THE NATURAL LAW INSTITUTE, ON THE CONSTITUTIONAL SEQUENCING OF PARENTAL, BODILY, PROFESSIONAL, AND GOVERNMENTAL MEDICAL AUTHORITY

---

## MOTION FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE

Proposed amicus curiae Brandon Michael Hayes, President of the Natural Law Institute, respectfully moves for leave to file the proposed Brief of Amicus Curiae contained herein.

District courts possess discretion to receive amicus submissions where they may assist the Court in the consideration of matters before it. See, e.g., *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970).

The proposed brief presents a decisional architecture for controversies in which professional medical information, governmental authority, bodily or parental interests, and institutional consequences interact. It organizes those questions through three related sequences:

**Fidelity → Evidence → Expertise → Recommendation → Reliance**

**Agency → Authority → Custody → Role**

**Object → Mechanism → Nexus → Alternative → Consequence**

The submission is offered to assist classification rather than advocate the preferred result of any existing party. It distinguishes scientific evidence from legal authority, professional

recommendation from governmental power, governmental object from governmental mechanism, parental authority from institutional custody, and the existence of a rule from the availability of exemption from that rule.

The proposed brief is particularly suited to amicus treatment because the same architecture is presently visible at different points across several federal proceedings. The brief uses those proceedings comparatively to demonstrate how informational, jurisdictional, and operational predicates interact without becoming interchangeable. Each proceeding remains governed by its own record, substantive law, and procedural posture.

The proposed amicus does not seek intervention, party status, discovery, enlargement of the evidentiary record, or adjudication of proceedings pending elsewhere. Its contribution is structural and supplemental to the advocacy of the existing parties.

The submission is tendered as a complete integrated brief. **To the extent an applicable local rule, standing order, individual practice, or other requirement imposes a shorter page or word limitation, proposed amicus respectfully requests leave to exceed that limitation and to file the proposed brief in full.** The architecture develops cumulatively across informational, authority-allocation, and application sequences and uses the related proceedings to demonstrate their interaction. Acceptance of the complete submission preserves that relationship without requiring the Court to reconstruct it from an abbreviated presentation.

Proposed amicus likewise respectfully requests that the Court accept this combined presentation of the Motion for Leave and proposed amicus brief. The proposed brief begins immediately following this Motion.

Proposed amicus has conferred, or attempted in good faith to confer, with counsel of record concerning the requested leave. **The manner of conferral and advance notice is stated in the Certificate of Conferral and Advance Notice at the conclusion of this submission and is incorporated herein.**

The proposed filing is intended to assist consideration of issues already presented and does not request alteration of any existing briefing schedule or delay in adjudication.

---

**REQUEST FOR RELIEF**

WHEREFORE, proposed amicus respectfully requests that the Court:

1. **grant leave to file the proposed Brief of Amicus Curiae contained herein;**
2. **grant such leave as is necessary to exceed any otherwise applicable page or word limitation and permit the complete integrated brief to be received;**

3. **accept the combined Motion for Leave and proposed Brief of Amicus Curiae in the form submitted; and**
4. **grant such further procedural relief as permits consideration of the proposed amicus submission consistent with the Court's local rules, standing orders, and management of the action.**

Respectfully submitted,

**Brandon Michael Hayes**
President, Natural Law Institute
159 Indian Hill Street
West Newbury, Massachusetts 01985
(617) 438-2049
brandon@hayeshaus.com

Dated: September 16, 2026

---

[PROPOSED] **BRIEF OF AMICUS CURIAE BRANDON MICHAEL HAYES, PRESIDENT OF THE NATURAL LAW INSTITUTE, ON THE CONSTITUTIONAL SEQUENCING OF PARENTAL, BODILY, PROFESSIONAL, AND GOVERNMENTAL MEDICAL AUTHORITY**

---

## STATEMENT OF INTEREST OF AMICUS CURIAE

Brandon Michael Hayes submits this brief in his individual capacity, identifying his role as President of the Natural Law Institute as his institutional affiliation and the source of the research interest described herein.

The Natural Law Institute is a constitutional research and public-interest institute concerned with the relationship among individual liberty, family authority, institutional responsibility, informational integrity, and governmental power.

The Institute's interest is structural.

Related federal litigation presently addresses different points within the constitutional and institutional pathway by which medical information becomes professional recommendation, professional recommendation becomes governmental policy, governmental policy becomes an

enforceable condition, and that condition produces consequences for persons, families, institutions, and States.

The proceedings discussed in this brief arise under different causes of action and in different procedural postures. Some concern the fidelity and provenance of professional representations. Some concern administrative authority to establish or alter medical recommendations. Some concern state reliance upon federal standards. Others concern parental authority, bodily integrity, religious exercise, education, disability, exemptions, institutional access, and the relationship between an asserted governmental object and the mechanism selected to accomplish it.

They repeatedly expose the same antecedent problem:

> **What information supports an asserted standard; who possesses lawful authority to act upon that information; and what relationship must exist between the authority exercised, the mechanism selected, and the consequence imposed?**

The proposed framework begins with classification rather than outcome.

It distinguishes scientific evidence from legal authority; professional recommendation from governmental power; governmental object from governmental mechanism; parental authority from governmental custody; a rule from an exemption to that rule; and the legitimacy of an objective from the constitutional validity of the means selected to accomplish it.

Three interacting sequences organize those questions.

The informational sequence is:

> **Fidelity → Evidence → Expertise → Recommendation → Reliance.**

The allocation-of-authority sequence is:

> **Agency → Authority → Custody → Role.**

The application sequence is:

> **Object → Mechanism → Nexus → Alternative → Consequence.**

The sequences meet when professional information becomes a predicate for institutional or governmental action.

Amicus offers that architecture to assist courts in determining which proposition is actually disputed, which actor bears responsibility for establishing it, and which body of law governs it.

## QUESTION PRESENTED

Whether, when professional medical information, governmental authority, bodily or parental interests, and institutional consequences interact within a constitutional controversy, the distinct predicates ought to be identified in sequence:

**First**, whether the informational foundation possesses sufficient fidelity to support professional interpretation and reliance;

**Second**, which actor possesses lawful authority over the decision or object at issue, from what source that authority arises, and in what role or custodial relationship it operates;

**Third**, what governmental or institutional object is asserted, what mechanism is selected to advance it, what evidentiary nexus connects mechanism to object, what alternatives are constitutionally material, and what consequence follows.

Stated compactly:

> **May evidence or expertise establish factual predicates without itself supplying legal authority; and may possession of legal authority establish jurisdiction to act without itself establishing the factual fit, necessity, or consequence of the particular exercise?**

## PRELIMINARY STATEMENT

The matters collected in this brief do not ask identical questions.

That is their significance.

Different federal courts are presently adjudicating different portions of a common decisional architecture.

One proceeding challenges alleged representations underlying a professional vaccine standard.

Others challenge governmental authority and procedure used to alter federal medical recommendations.

Others concern state reliance upon those recommendations.

Still others concern the conversion of public-health judgment into vaccination requirements, school-access conditions, religious exemptions, parental burdens, disability-related educational consequences, and individualized applications of generally applicable rules.

Related Supreme Court and appellate proceedings concern parental authority, institutional authority, bodily intervention, religious formation, and the nexus between a governmental mechanism and the person upon whom it operates.

No one of these controversies requires a court to decide every question presented by the others.

Their recurrence demonstrates why the questions ought to remain distinct.

A court evaluating the fidelity of a professional representation need not thereby determine the constitutional scope of state police power.

A court evaluating administrative authority to alter a federal recommendation need not thereby determine whether a parent possesses a religious exemption from a state mandate.

A court evaluating an exemption need not treat the professional recommendation, governmental authority, mechanism, nexus, and consequence as though they were a single legal proposition.

Each occupies a different position within the same structure.

The structure contains three interacting chains.

The first concerns **knowledge**:

**Fidelity → Evidence → Expertise → Recommendation → Reliance.**

The second concerns **authority**:

**Agency → Authority → Custody → Role.**

The third concerns **application**:

**Object → Mechanism → Nexus → Alternative → Consequence.**

No chain can substitute for another.

Reliable evidence does not independently create governmental jurisdiction.

Governmental jurisdiction does not independently establish empirical truth.

A legitimate governmental object does not automatically establish every mechanism selected to achieve it.

And the existence of a generally valid mechanism does not by itself establish an identical nexus or consequence in every application.

The resulting proposition is narrow:

> **Scientific evidence may establish disease, risk, efficacy, transmission, contraindication, and consequence. Professional expertise may interpret that evidence and produce recommendations. Neither independently identifies the constitutional source of governmental authority. Conversely, lawful authority does not establish the empirical validity or fit of the factual propositions invoked in its exercise.**

Constitutional adjudication therefore benefits from identifying:

- **what is known;**
- **who may decide;**
- **for what object;**
- **through what mechanism;**
- **upon what nexus;**
- and **with what consequence.**

The recurring litigation addressed below demonstrates that the problem is architectural rather than case-specific.

---

## SUMMARY OF ARGUMENT

The Constitution distributes power before courts measure its exercise.

A child, parent, physician, professional organization, school, legislature, executive agency, and court occupy different legal roles.

Each may possess authority.

Their authorities are neither identical nor automatically transferable.

Parents possess a constitutionally protected interest in the care, custody, and control of their children. *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Wisconsin v. Yoder*, 406 U.S. 205 (1972); *Troxel v. Granville*, 530 U.S. 57 (2000).

Children possess constitutional interests of their own.

- Government possesses police powers directed toward health, safety, education, and protection of children.
- Schools exercise educational and institutional authority.
- Physicians exercise professional judgment within legally defined relationships.
- Professional organizations develop recommendations that can materially influence public policy.
- Courts determine the legal boundaries among those spheres.

The constitutional task is therefore relational.

The question is seldom whether one actor possesses **any** authority.

The question is what authority exists over the particular object, where its boundary lies, and what is required before one authority may displace, burden, or condition another.

Bodily intervention illustrates the problem acutely.

The Supreme Court has repeatedly recognized constitutionally cognizable interests against unwanted medical treatment or bodily intrusion. *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990); *Washington v. Harper*, 494 U.S. 210 (1990); *Riggins v. Nevada*, 504 U.S. 127 (1992); *Sell v. United States*, 539 U.S. 166 (2003).

Those cases arise in settings materially different from school vaccination.

They do not establish a universal constitutional test governing every medical intervention.

They establish something more basic and directly useful here:

> **Governmental action directed to the body is constitutionally classifiable and cannot be treated as indistinguishable from every other form of regulation.**

Public-health cases add another source of authority.

*Jacobson* recognized the state police power to regulate vaccination for protection of public health. *Zucht* carried that authority into school-access regulation.

The proper synthesis is therefore not bodily authority **or** police power.

It is bodily authority **and** police power, classified together.

The Court identifies the person affected, the governmental authority claimed, the governmental object, the mechanism, the nexus connecting them, available alternatives where constitutionally material, and the consequences imposed.

The same principle applies to scientific expertise.

Professional knowledge can establish facts material to governmental action.

- A professional organization, however, does not obtain sovereign power because its scientific judgment is persuasive.
- A legislature does not establish a scientific proposition merely by legislating it.
- An administrative agency does not make evidence true by adopting it.

Accordingly, the informational sequence—

**Fidelity → Evidence → Expertise → Recommendation → Reliance**

—must remain distinct from the governmental sequence—

**Agency → Authority → Custody → Role → Object → Mechanism → Nexus → Alternative → Consequence.**

Current federal litigation demonstrates why.

In *Shaw v. American Academy of Pediatrics*, No. 1:26-cv-00171-TJK (D.D.C.), plaintiffs challenge alleged representations concerning the childhood vaccine schedule through RICO claims. The case places the professional informational predicate itself in dispute. The allegations remain allegations; the pending motion to dismiss places their legal sufficiency before that court.

In *American Academy of Pediatrics v. Kennedy*, No. 1:25-cv-11916-BEM (D. Mass.), medical and public-health organizations challenge federal changes concerning vaccine recommendations and associated administrative structures. That controversy concerns governmental alteration of a professional and administrative standard.

In *State of Arizona v. Kennedy*, No. 3:26-cv-01609 (N.D. Cal.), States challenge federal alterations to the childhood immunization schedule, ACIP-related actions, and hepatitis-B recommendations under administrative law.

In *Miller v. McDonald*, 180 F.4th 420 (2d Cir. 2026), Amish families challenged New York's vaccination regime after repeal of the religious exemption. The Supreme Court had granted certiorari, vacated the earlier Second Circuit judgment, and remanded for reconsideration under *Mahmoud*. The Second Circuit reconsidered and again affirmed.

In *Perry v. Marteney*, 172 F.4th 315 (4th Cir. 2026), the vaccination requirement was applied to a child enrolled in a public virtual school. The resulting dispute makes the relation between governmental object and regulatory nexus unusually visible. The matter has now generated Supreme Court proceedings linked to No. 26-319.

In *Children's Health Defense v. McDonald*, No. 2:25-cv-06877-JMA-AYS (E.D.N.Y.), the district court recently denied preliminary injunctive relief because *Miller II* controlled the likelihood-of-success analysis.

And outside vaccination, *Mahmoud v. Taylor*, 606 U.S. 522 (2025), *Mirabelli v. Bonta*, 607 U.S. 492 (2026), and *Foote v. Ludlow School Committee*, No. 25-77, demonstrate continuing litigation over the allocation among parental, child, school, and governmental authority. *Foote* reached the Supreme Court through a certiorari petition ultimately denied without merits adjudication; *Mirabelli* reached the Court in an emergency posture; *Mahmoud* produced a merits decision.

The cases do not all require the same outcome.

They require the same first discipline:

**identify the constitutional object before adjudicating it.**

---

## ARGUMENT

### I. CONSTITUTIONAL ADJUDICATION MUST BEGIN BY IDENTIFYING THE AUTHORITY ACTUALLY BEING EXERCISED

Constitutional cases often become difficult because multiple legitimate interests are compressed into a single verbal category.

"Public health" is one example.

"Parental rights" is another.

"Education," "religion," "science," and "medical necessity" can operate similarly.

Each describes something important.

None independently supplies the entire legal analysis.

A governmental assertion that a measure advances public health identifies an **Object**.

It does not by itself identify:

- who holds the affected decisional authority;
- the precise legal source permitting government to intervene;
- the permissible mechanism;
- the required connection between that mechanism and the object;

- the relevance of alternatives;
- or the consequence government may attach to refusal.

Likewise, identifying a constitutionally protected parental interest does not resolve every controversy concerning a child.

Parental authority exists within a constitutional structure that also recognizes:

- the child's interests;
- the State's protective authority;
- the State's power to regulate health and education;
- and the role of institutions legitimately entrusted with particular responsibilities.

The task is allocation.

The relevant antecedent depends upon the posture of the controversy.

- Where exemption is sought, the lawful source and scope of the underlying authority precede distribution of an exemption.
- Where administrative action is challenged, delegated authority and statutory role precede evaluation of the challenged exercise.
- Where professional representations are challenged, Fidelity and Evidence precede Reliance.
- Where a governmental mechanism is challenged as applied, Object and Mechanism precede Nexus and Consequence.

The common principle is:

> **A downstream determination cannot itself supply an unexamined upstream predicate.**

The sequence must therefore ask:

> **What proposition is presently being exercised or relied upon; who bears responsibility for establishing it; and what antecedent propositions must exist before the downstream consequence follows?**

---

## II. PARENTAL AUTHORITY IS CONSTITUTIONALLY PROTECTED, RELATIONAL, AND BOUNDED

The Supreme Court has repeatedly recognized the constitutional significance of the parent-child relationship.

- *Meyer* identified liberty interests encompassing family and upbringing.
- *Pierce* rejected governmental standardization of children through compulsory public schooling.
- *Yoder* protected Amish parents against a compulsory educational requirement that substantially interfered with religious formation.
- *Troxel* described parental care, custody, and control as among the oldest fundamental liberty interests recognized by the Court.

These authorities establish a constitutional sphere of parental responsibility.

That sphere is relational rather than proprietary.

A parent does not own a child.

Parental authority exists because the parent bears responsibilities concerning the child's care, safety, upbringing, formation, and welfare.

The State, in turn, possesses authority to protect children and regulate matters within legitimate governmental competence.

*Prince v. Massachusetts*, 321 U.S. 158 (1944), illustrates that boundary. Parental and religious liberty do not eliminate the State's protective responsibilities, particularly where physical welfare or public safety is implicated.

The correct classification is therefore neither:

**Parent always controls**

nor

**State may substitute judgment whenever a governmental interest exists.**

The constitutional question is:

> **What decision is at issue, who ordinarily holds authority over it, what governmental authority permits displacement, and what predicate must exist before displacement occurs?**

This becomes especially important when the decision concerns a child's body.

## III. "CUSTODY" IDENTIFIES WHO POSSESSES OPERATIVE DECISIONAL CONTROL AT THE RELEVANT MOMENT

The word "custody" can describe several legally different relationships.

- Legal custody of a child is one.
- Physical custody is another.
- Temporary institutional supervision is another.
- Medical consent authority is another.
- Judicially transferred custody presents still another configuration.

The framework therefore uses **Custody** as a classification question:

> **Who presently possesses lawful decisional control over the particular object at issue?**

A child's attendance at school gives the school authority necessary to educate, supervise, maintain order, protect students, and execute lawful educational responsibilities.

Enrollment does not automatically transfer every form of parental medical authority to the school.

Conversely, parental authority does not eliminate legitimate school authority over matters properly committed to the institution.

The boundary must be classified according to the object.

Contemporary school-transition litigation makes this distinction especially visible because it places parental, child, school, and governmental authority into direct relation without depending upon vaccination doctrine.

The factual controversy differs from the medical-policy cases discussed elsewhere in this brief.

The allocation problem is structurally related.

In *Foote v. Ludlow School Committee*, parents asked whether a public school may participate in a child's social gender transition without parental knowledge or consent. The First Circuit resolved the claims against the parents; the Supreme Court later denied certiorari. No. 25-77.

The denial supplies no merits determination by the Supreme Court.

The fact that the dispute traveled through the First Circuit and was presented to the Supreme Court nevertheless demonstrates the recurrence of disputes over the boundary among parent, child, and public school.

*Mirabelli v. Bonta* presented another configuration.

The Supreme Court acted in an interlocutory emergency posture involving school policies and parental religious claims concerning gender transition.

The procedural posture counsels against treating *Mirabelli* as though it were a fully developed final merits judgment resolving every adjacent question.

It remains important evidence of the constitutional salience of the parent-child-school allocation.

These cases illuminate the category.

They demonstrate that institutional access does not itself answer institutional authority.

The same classification applies when an institution or government attaches legal consequences to a medical, educational, or other condition affecting a child.

---

## IV. BODILY INTEGRITY IS A DISTINCT CONSTITUTIONAL OBJECT

The Supreme Court has long treated unwanted medical intervention as constitutionally significant.

- In *Cruzan*, the Court addressed an individual's liberty interest concerning unwanted medical treatment.
- In *Washington v. Harper*, the Court recognized a prisoner's significant liberty interest in avoiding unwanted administration of antipsychotic medication while also recognizing circumstances in which the State may override that interest.
- *Riggins* and *Sell* likewise required governmental justification for involuntary medication in criminal-justice settings.

These cases differ materially from vaccination cases.

Their standards should not be mechanically imported into school-immunization litigation.

Their more general lesson is directly relevant:

**The body is a constitutionally cognizable object of governmental action.**

Government therefore does not answer a bodily-authority question merely by showing that it has regulatory authority somewhere in the field.

The legal analysis must classify the relationship between authority and intervention.

This gives the Court a continuum already implicit in the original amicus submission:

**information → encouragement → regulation → condition → compulsion → physical intervention.**

The constitutional analysis can recognize differences among those forms of governmental action.

- A recommendation is not a mandate.
- A mandate enforced by a monetary penalty is not identical to direct physical administration.
- A condition of school attendance is not identical to either.

Yet a condition may impose substantial legal and practical pressure.

That makes the consequence relevant to classification.

---

## V. JACOBSON SUPPLIES A SOURCE OF PUBLIC-HEALTH AUTHORITY; IT DOES NOT MAKE THE REMAINDER OF THE SEQUENCE DISAPPEAR

*Jacobson v. Massachusetts* is foundational.

The Court upheld Massachusetts's authority under its police power to adopt a compulsory smallpox vaccination law.

The case recognizes that constitutional liberty exists within organized society and can be subject to reasonable regulations protecting public health.

*Jacobson* therefore answers an important threshold proposition:

> **States can possess constitutional authority to require vaccination in furtherance of public health.**

That proposition ought to be preserved accurately.

But the proposition does not mean:

every intervention labeled public health is constitutionally interchangeable;

or:

every application of a vaccination rule presents the same nexus;

or:

the existence of a public-health objective establishes every enforcement consequence;

or:

scientific consensus becomes an independent constitutional source of power.

*Jacobson* establishes authority in context.

Constitutional adjudication still requires identification of the particular governmental action before the court.

That is not an effort to evade *Jacobson*.

It is a method for applying rather than overgeneralizing it.

---

## VI. ZUCHT CONNECTS VACCINATION TO SCHOOL ACCESS, BUT ACCESS REMAINS A DISTINCT CONSTITUTIONAL MECHANISM

*Zucht v. King*, 260 U.S. 174 (1922), rejected a constitutional challenge to ordinances excluding unvaccinated children from schools.

Together, *Jacobson* and *Zucht* establish substantial doctrinal support for state school-vaccination regimes.

They also make the mechanism visible:

- **governmental object:** protection against communicable disease;
- **medical mechanism:** vaccination;
- **institutional enforcement mechanism:** exclusion from school.

Those are three different things.

A court can accept the legitimacy of the first while still identifying the operation of the second and third.

That distinction becomes consequential where factual settings change.

- Physical attendance may create one public-health relationship.
- Virtual participation may create another.
- A medically contraindicated student may present another.
- A child receiving statutorily protected special-education services may present another.

The constitutional structure is better served by identifying those differences than by allowing the word "vaccination" to absorb them.

---

## VII. SCIENCE INFORMS GOVERNMENTAL AUTHORITY; IT DOES NOT CREATE GOVERNMENTAL AUTHORITY

Scientific evidence may be extraordinarily powerful.

It may establish:

- whether a disease is transmissible;
- how transmission occurs;
- the severity and distribution of risk;
- the efficacy of a vaccine;
- the duration of protection;
- the effect upon infection or transmission;
- the incidence and nature of adverse effects;
- the consequences of nonvaccination;
- the characteristics of vulnerable populations;
- or the effectiveness of alternative interventions.

Those propositions are central to public-health decisionmaking.

But they answer an empirical question:

**What is likely to happen?**

Constitutional law asks an additional question:

**Who possesses lawful authority to act upon that information?**

- A scientist may correctly identify a danger without possessing governmental authority to regulate it.
- A professional organization may develop a sound recommendation without acquiring coercive jurisdiction over parents or children.

- An administrative agency may possess delegated authority but remain obligated to exercise it according to statute and procedure.
- A legislature may possess lawmaking authority while depending on outside expertise for the factual predicate of its decisions.
- A court possesses adjudicative authority but ordinarily does not substitute itself for scientific institutions on empirical matters properly proved through evidence.

These roles complement one another.

They are not interchangeable.

Accordingly:

> **Expertise informs the exercise of lawful authority; expertise does not create the authority it informs.**

The converse follows:

> **Legal authority does not establish empirical truth merely through adoption.**

That distinction is becoming increasingly important because contemporary vaccine litigation operates at multiple layers of the information-to-law chain simultaneously.

---

## VIII. WHERE GOVERNMENT RELIES UPON PROFESSIONAL INFORMATION, FIDELITY PRECEDES RELIANCE

The informational sequence is:

> **Fidelity → Evidence → Expertise → Recommendation → Reliance.**

### A. Fidelity

Fidelity asks whether the information communicated corresponds accurately to the underlying evidence.

It concerns provenance, completeness, representation, and reliability.

### B. Evidence

Evidence supplies the empirical material from which conclusions may be drawn.

### C. Expertise

Expertise supplies disciplined interpretation.

**D. Recommendation**

Recommendation converts interpretation into proposed action.

**E. Reliance**

Reliance occurs when another actor—parent, physician, agency, legislature, school, insurer, or court—acts upon the recommendation.

Only after this informational sequence does the separate authority question arise:

**What legal consequence may the relying actor attach to the recommendation?**

This distinction prevents two opposite errors.

The first is treating professional expertise as though it automatically carried sovereign authority.

The second is treating legal disagreement over authority as though it disproved the underlying science.

Neither follows.

---

## IX. SHAW v. AMERICAN ACADEMY OF PEDIATRICS PLACES THE INFORMATIONAL PREDICATE ITSELF IN DISPUTE

In *Shaw et al. v. American Academy of Pediatrics*, No. 1:26-cv-00171-TJK (D.D.C.), individual plaintiffs, physicians, and Children's Health Defense brought a civil RICO action against the American Academy of Pediatrics.

The complaint challenges alleged representations and institutional conduct relating to the childhood vaccination schedule.

AAP has moved to dismiss, and the legal sufficiency of those allegations is before the District Court. The allegations are therefore contested claims, not adjudicated facts.

The structural significance of *Shaw* does not depend upon acceptance of those allegations.

The case demonstrates that professional recommendation is itself a legally contestable object.

That places **Fidelity** at the beginning of the informational chain:

**Information → Fidelity → Evidence → Expertise → Recommendation → Reliance.**

The legal system therefore cannot treat the professional recommendation and governmental authority derived from reliance upon it as one indivisible category.

They are successive predicates.

---

## X. AAP v. KENNEDY PRESENTS THE NEXT LINK: GOVERNMENTAL CONTROL OF THE PROFESSIONAL AND ADMINISTRATIVE STANDARD

*American Academy of Pediatrics et al. v. Kennedy et al.*, No. 1:25-cv-11916-BEM (D. Mass.), concerns challenges by medical and public-health organizations to federal vaccine-policy changes and related agency action.

The litigation has included extensive amicus participation and has produced related First Circuit proceedings.

Structurally, the dispute occupies the next portion of the sequence:

**Evidence → Expertise → Recommendation → Administrative Adoption → Governmental Standard.**

The controversy asks who may alter the governmental recommendation, under what delegated authority, and according to what administrative procedure.

Again, that is a different question from whether a State may ultimately impose a vaccination requirement.

Federal recommendations can powerfully affect state law, insurance, medical practice, and public reliance.

But recommendation and coercion remain different legal acts.

That distinction is central to constitutional sequencing.

---

## XI. STATE OF ARIZONA v. KENNEDY DEMONSTRATES STATE RELIANCE UPON THE FEDERAL INFORMATIONAL PREDICATE

*State of Arizona et al. v. Kennedy et al.*, No. 3:26-cv-01609 (N.D. Cal.), makes the next link unusually visible.

The plaintiff States challenge federal actions affecting the childhood immunization schedule, advisory structures, and hepatitis-B recommendations under the Administrative Procedure Act and related law. They allege consequences for state public-health systems and state reliance upon federal recommendations.

The sequence there is:

> **Federal Evidence → Federal/Professional Recommendation → State Reliance → State Administration → Individual Consequence.**

This demonstrates why constitutional sequencing must preserve the difference between informational authority and coercive authority.

A State may rely upon federal expertise.

Reliance does not mean the federal recommendation itself supplies the State's police power.

The State's coercive authority arises from a different legal source.

Likewise, alteration of a federal recommendation does not automatically repeal or create a state mandate.

Different layers remain legally distinct even when operationally intertwined.

---

## XII. MILLER v. McDONALD DEMONSTRATES THAT EXEMPTION DOCTRINE CAN DOMINATE THE ANALYSIS WHILE THE ANTECEDENT AUTHORITY QUESTION REMAINS DISTINCT

*Miller v. McDonald* arose from New York's repeal of the religious exemption to its school-immunization law.

The plaintiffs included Amish parents and Amish community schools.

The Second Circuit initially affirmed dismissal.

The Supreme Court then granted certiorari, vacated the judgment, and remanded for reconsideration in light of *Mahmoud v. Taylor*. SCOTUS No. 25-133.

On remand, the Second Circuit again affirmed.

It held New York's law neutral and generally applicable and concluded that the burden did not possess the same character as those addressed in *Yoder* and *Mahmoud*. *Miller v. McDonald*, 180 F.4th 420 (2d Cir. 2026).

*Miller* therefore resolves significant questions within Free Exercise doctrine.

The present framework identifies a logically separate one:

> **Before a court determines whether religion requires an exemption from governmental bodily authority, what establishes the scope of the governmental bodily authority from which exemption is sought?**

That question does not require a court to disregard *Miller*.

It identifies the proposition *Miller* actually adjudicated.

A precedent concerning neutrality, general applicability, or the character of a religious burden should be given its full effect.

It also should be given its actual scope.

Constitutional sequencing assists courts in doing both.

---

## XIII. PERRY v. MARTENEY IS THE NEXUS CASE

*Perry v. Marteney* presents an especially useful demonstration of the **Nexus** element.

The case concerned application of West Virginia's vaccination law after a child was disenrolled from a public virtual school for failure to satisfy vaccination requirements.

The Fourth Circuit rejected the constitutional challenge and distinguished *Mahmoud* and *Mirabelli*. *Perry v. Marteney*, 172 F.4th 315 (4th Cir. 2026).

The Supreme Court docket now links the matter to No. 26-319.

Whatever ultimate disposition follows, the factual configuration exposes a question that is often hidden in conventional mandate analysis:

> **What is the relationship between the governmental object and the regulated person's actual circumstances?**

The sequence is unusually easy to see:

RECEIVED
MAILROOM
SEP 18 2026
Angela D. Caesar, Clerk
U.S. District & Bankruptcy Courts
for the District of Columbia

- **Object:** reducing communicable-disease transmission associated with school populations.
- **Mechanism:** vaccination.
- **Institutional condition:** vaccination as a condition of enrollment.
- **Regulated person:** a virtual-school student.

**Nexus question:** how does the mechanism advance the asserted object in that specific institutional configuration?

The Fourth Circuit answered the legal dispute in favor of the State.

The framework does not dictate otherwise.

Its value is that it makes the question visible.

A legitimate object cannot automatically establish every conceivable application of a mechanism.

The relationship must be identified.

That is **Nexus**.

---

## XIV. CHILDREN'S HEALTH DEFENSE v. McDONALD SHOWS HOW A HIGHER-COURT CLASSIFICATION CASCADES INTO LATER CASES

In *Children's Health Defense et al. v. McDonald*, No. 2:25-cv-06877-JMA-AYS (E.D.N.Y.), plaintiffs challenge application of New York Public Health Law § 2164.

On August 20, 2026, the District Court denied preliminary injunctive relief because *Miller II* foreclosed the plaintiffs' showing of likelihood of success on their Free Exercise and *Mahmoud* theories.

That is conventional operation of vertical precedent.

It also demonstrates why classification at the earlier stage matters.

Once a circuit precedent categorizes the constitutional object, later district courts understandably apply that categorization.

The resulting chain is:

> **Initial classification → appellate rule → later application → repeated doctrinal framing.**

If the earlier precedent adjudicated Question A, later courts applying it to Question A are acting appropriately.

If a later case presents distinct Question B, however, the existence of controlling precedent on Question A does not eliminate the need to determine whether Question B has actually been reached.

The amicus framework exists to expose that distinction.

---

## XV. WE THE PATRIOTS USA v. MAKIN PRESENTS THE AUTHORITY-TO-EXEMPTION SEQUENCE DIRECTLY

*We the Patriots USA, Inc. v. Makin*, No. 2:26-cv-00369-SDN (D. Me.), presents the authority-to-exemption sequence directly.

The litigation challenges enforcement of Maine's school-vaccination requirements against a child whose parent asserts religious objections.

The District Court's September 8, 2026 preliminary-injunction ruling analyzed neutrality, general applicability, medical exemptions, *Yoder*, *Mahmoud*, *Mirabelli*, *Miller*, *Perry*, and relevant vaccination precedent.

That adjudication addresses an important question:

> **Whether the challengers established entitlement to heightened Free Exercise scrutiny under the theories and record presented at the preliminary-injunction stage.**

The present architecture identifies a related but analytically earlier classification:

> **What authority is exercised when government makes a bodily intervention a condition of educational access, and how does that authority relate to the later question whether religion requires exemption from the condition?**

The two inquiries can coexist.

One asks how a rule treats religious exercise.

The other identifies what authority the rule exercises.

The distinction may be stated compactly:

> **Exemption doctrine distributes exceptions from an asserted authority. Authority analysis identifies the jurisdiction and legal object from which those exceptions are sought.**

---

## XVI. MAHMOUD, MIRABELLI, AND FOOTE DEMONSTRATE THAT THE AUTHORITY PROBLEM EXTENDS BEYOND VACCINATION

A framework confined to vaccine litigation could be mistaken for a disguised argument about vaccines.

The contemporary parental-rights cases demonstrate otherwise.

### A. Mahmoud v. Taylor

In *Mahmoud v. Taylor*, 606 U.S. 522 (2025), the Supreme Court considered parental religious objections to public-school instruction concerning sexuality and gender.

The Court held that the challenged regime substantially burdened parental religious exercise and required appropriate accommodation under the circumstances presented.

The important structural point here is broader than the substantive subject.

The case required identification of:

- parental authority;
- school authority;
- religious formation;
- the governmental educational object;
- the mechanism through which instruction reached the child;
- and the consequence of compulsory exposure.

That is constitutional sequencing.

### B. Mirabelli v. Bonta

*Mirabelli v. Bonta*, 607 U.S. 492 (2026), arose in an emergency interlocutory posture and concerned school policies affecting parental knowledge and religious upbringing in relation to gender transition.

Because the case reached the Court through emergency review rather than a final merits judgment, its procedural posture matters.

Its structural relevance is nonetheless direct:

**Parent → Child → School → Government → contested decisional authority.**

### C. Foote v. Ludlow School Committee

*Foote v. Ludlow School Committee* presented the Supreme Court with a petition concerning whether a public school violates parental constitutional rights when it participates in a child's social transition without parental knowledge or consent.

The Supreme Court denied certiorari on April 20, 2026. SCOTUS No. 25-77.

A denial of certiorari establishes no merits rule.

The litigation remains useful here as evidence that substantially similar questions concerning allocation among parent, child, school, and State continue to recur.

That recurrence across a subject unrelated to vaccination is particularly probative.

It demonstrates that the fundamental problem is **authority classification**, not vaccine policy.

---

## XVII. THE FRAMEWORK REQUIRES NINE SUCCESSIVE CLASSIFICATIONS

The Court can make the constitutional object fully visible through nine questions.

### 1. AGENCY

- Who acts?
- Who decides?
- Who experiences the intervention?
- Who bears the consequence?

These may be different persons.

In a pediatric medical case, the child experiences the bodily intervention while a parent ordinarily exercises substantial decisional responsibility.

- The State may regulate.
- A school may enforce an attendance condition.

- A physician may administer treatment.

Each actor occupies a different place.

**2. AUTHORITY**

What is the legal source of each actor's power?

- For government, the source may include state police power, legislation, delegated administrative authority, parens patriae authority, or another lawful grant.
- For parents, authority arises within the constitutionally protected parent-child relationship.
- For a physician, authority ordinarily depends upon professional licensure and valid consent or another lawful basis for treatment.
- For a school, authority arises from law and the institutional relationship.

Authority must be identified before its permissible exercise can be measured.

**3. CUSTODY**

Who possesses operative decisional control over the particular object?

This inquiry is especially important where minors are involved.

Legal custody, educational supervision, medical consent authority, protective custody, and temporary institutional control are not interchangeable.

The Court must identify which is relevant.

**4. ROLE**

In what capacity does the actor function?

- A professional organization recommends.
- A physician diagnoses and treats.
- A legislature enacts.
- An agency administers.
- A school educates and supervises.
- A parent cares for and directs upbringing.
- A court adjudicates.

Authority belonging to one role does not automatically migrate into another.

**5. OBJECT**

What is government actually trying to accomplish?

"Public health" may be too general to permit meaningful review.

The object might be:

- reducing measles transmission in congregate schools;
- protecting medically vulnerable students;
- maintaining a specified population immunity level;
- preventing introduction of a disease into a school;
- or ensuring continuity of safe educational operation.

Specificity improves adjudication.

**6. MECHANISM**

What does government actually require?

- Vaccination is a mechanism.
- Testing is a mechanism.
- Isolation is a mechanism.
- Masking is a mechanism.
- Proof of immunity is a mechanism.
- Exclusion is an enforcement mechanism.

The constitutional validity of the object and the validity of a selected mechanism are related questions, not identical ones.

**7. NEXUS**

How does the mechanism advance the identified object in the circumstances actually presented?

This is where empirical science becomes indispensable.

Nexus asks for correspondence between:

- the person regulated;
- the risk asserted;
- the intervention imposed;
- and the result sought.

Scientific evidence may strongly establish that relationship.

Where it does, the State's case becomes stronger.

Where circumstances materially alter the relationship, the Court can see the difference.

**8. ALTERNATIVE**

What materially effective alternatives exist, where constitutional doctrine makes alternatives relevant?

Alternative analysis should not become an automatic least-restrictive-means test in every case.

Different standards of review impose different legal demands.

But alternatives remain analytically useful because they illuminate the fit between mechanism and object.

They may reveal whether a disputed mechanism is essential, substantially preferable, or merely one available regulatory option.

**9. CONSEQUENCE**

What happens upon refusal?

- A fine is one consequence.
- School exclusion is another.
- Loss of employment is another.
- Loss of a license is another.
- Loss of a public benefit is another.
- Direct physical administration would be another.

The consequence identifies how governmental authority actually operates upon the person.

---

## XVIII. THE NINE-PART SEQUENCE CORRESPONDS TO ESTABLISHED CONSTITUTIONAL QUESTIONS RATHER THAN CREATING A NEW FREE-STANDING RIGHT

The framework need not be adopted as a new doctrinal test.

Its function is organizational.

- Existing constitutional doctrines already ask versions of these questions.
- Due Process asks what liberty or property interest is affected and what governmental justification or procedure applies.
- Free Exercise asks whether government burdens religious exercise, whether rules are neutral and generally applicable, and where applicable whether heightened scrutiny follows.
- Parental-rights doctrine asks about protected care, custody, upbringing, and the circumstances in which government may interfere.
- Equal Protection asks whether classifications and treatment are constitutionally permissible.
- Administrative law asks whether an agency has statutory authority, follows required procedure, and acts rationally upon the administrative record.
- Unconstitutional-conditions doctrine asks when government may condition access to benefits upon relinquishment of protected interests.
- Bodily-integrity cases ask what circumstances justify unwanted medical intervention.

The proposed sequence does not replace those doctrines.

It determines **which doctrine answers which question**.

That is particularly useful where several doctrines are present simultaneously.

---

## XIX. THE FRAMEWORK ALSO PREVENTS SCIENTIFIC DISAGREEMENT FROM BECOMING A SUBSTITUTE FOR CONSTITUTIONAL ANALYSIS

Medical controversies often generate competing scientific submissions.

Courts then face the danger of being pulled toward one of two category errors.

One is:

> because the science strongly supports the intervention, constitutional authority follows automatically.

The other is:

> because constitutional authority is disputed, the science supporting the intervention must therefore be wrong.

Neither inference is valid.

A scientifically excellent recommendation still requires lawful authority before government may impose it.

A constitutional defect in the exercise of authority would not establish that the underlying scientific recommendation is false.

Keeping those propositions separate improves judicial neutrality.

It also permits parties to prevail on the issue they actually prove.

---

## XX. THE SAME ARCHITECTURE CAN PRODUCE DIFFERENT LAWFUL RESULTS IN DIFFERENT CASES

A useful constitutional framework must be capable of producing different results without changing its structure.

Consider several configurations.

- Where a highly transmissible disease threatens congregate students, a vaccine materially reduces transmission, no materially equivalent alternative exists, and State law validly authorizes a school-entry requirement, the sequence may strongly support governmental action.
- Where a medical contraindication makes vaccination dangerous for a particular child, the same framework may support an exemption.
- Where participation is entirely virtual and the asserted object depends principally upon physical congregation, the Nexus inquiry becomes more prominent.
- Where a child independently possesses statutory rights to specialized educational services, the Consequence and Alternative inquiries become more prominent.
- Where government changes the informational predicate through an administrative process, Authority, Role, Fidelity, and Reliance become more prominent.
- Where professional representations themselves are challenged, Fidelity moves to the foreground.
- Where a school acts in an area claimed to belong to parental upbringing rather than education, Custody and Role become central.

The architecture remains the same.

The weight of each element changes with the controversy.

That is exactly what makes it suitable for cross-docket application.

## XXI. CROSS-DOCKET RECURRENCE DEMONSTRATES THE NEED FOR THE ARCHITECTURE

The present federal landscape can be mapped as a single chain.

**Shaw v. AAP**

tests the professional informational predicate:

> **Fidelity → Evidence → Expertise → Recommendation.**

**AAP v. Kennedy**

tests federal control of professional and administrative recommendation:

> **Recommendation → Administrative Authority → Governmental Standard.**

**Arizona v. Kennedy**

tests state reliance upon and injury from alteration of the federal standard:

> **Federal Standard → State Reliance → State Administration.**

**Miller v. McDonald**

tests religious exemption and parental religious authority within an established vaccination regime:

> **Mandate → Religion → Exemption → Parental Free Exercise.**

**Perry v. Marteney**

isolates the application nexus:

> **Object → Mechanism → Virtual Participation → Nexus.**

**Children's Health Defense v. McDonald**

demonstrates downstream application of *Miller*:

> **Circuit Classification → District-Court Application → Individual Consequence.**

**We the Patriots v. Makin**

presents:

**Authority → Parent/Child → Body → School Access → Religion → Exemption.**

**Mahmoud**

addresses:

**Parent → Child → Religious Formation → School Instruction.**

**Mirabelli**

addresses:

**Parent → Child → School/Government → Contested Institutional Authority.**

**Foote**

presented:

**Parent → Child → School → Social Transition → Disclosure/Control.**

And the bodily-integrity line—

*Cruzan*, *Harper*, *Riggins*, and *Sell*—

confirms that unwanted medical intervention constitutes a constitutionally cognizable category requiring lawful justification appropriate to context.

These are different cases.

That is precisely the point.

The recurrence of the same allocation problem across different substantive controversies demonstrates that the proposed architecture is not dependent upon a desired answer to one policy dispute.

---

## XXII. THE COURT NEED NOT OVERTURN ANY CONTROLLING AUTHORITY TO USE THE SEQUENCE

The proposed framework can operate within existing precedent.

- It does not require rejection of *Jacobson*.

- It does not require rejection of *Zucht*.
- It does not require treating *Mahmoud* as a vaccination case.
- It does not require treating *Mirabelli* as a final merits adjudication beyond its procedural posture.
- It does not require disregarding *Miller* or *Perry*.
- And it does not require converting every parental-rights claim into strict scrutiny.

Instead, it permits each precedent to occupy the legal position it actually decides.

- *Jacobson* informs public-health authority.
- *Zucht* informs school-entry vaccination authority.
- *Smith*, *Lukumi*, *Fulton*, and related cases govern neutrality and general applicability.
- *Yoder* and *Mahmoud* govern particular intersections between parental religious exercise and state action.
- *Mirabelli* contributes contemporary guidance concerning parent-school authority in its actual procedural posture.
- *Cruzan*, *Harper*, *Riggins*, and *Sell* establish the constitutional cognizability of unwanted medical intervention in their respective contexts.
- *Miller* and *Perry* apply contemporary Free Exercise and parental-rights doctrine to vaccination requirements.

No one case performs all of those functions.

The framework prevents the Court from asking one precedent to do the work of another.

---

## XXIII. A COMPACT DECISIONAL RULE CAN PRESERVE THE SEQUENCE

The architecture can be reduced to a neutral decisional proposition:

> **When government attaches legal consequences to refusal of a bodily or medical intervention, constitutional analysis must identify the source and scope of governmental authority, the protected interests affected, the governmental object, the mechanism selected, the evidentiary nexus connecting mechanism to object in the regulated circumstances, constitutionally material alternatives, and the consequence imposed. Where governmental action depends upon professional scientific information, courts must distinguish the fidelity, evidence, expertise, recommendation, and reliance underlying that action from the independent legal authority required to impose it.**

This rule does not prescribe the result.

It prescribes the order of the questions.

---

## XXIV. THE ORDER OF QUESTIONS MATTERS BECAUSE A LATER QUESTION CANNOT SUPPLY A MISSING ANTECEDENT PREDICATE

Constitutional analysis is sequential because predicates matter.

A valid exemption analysis cannot itself establish the source of the rule from which exemption is sought.

Scientific efficacy cannot itself establish legal authority.

Legal authority cannot itself establish empirical efficacy.

A compelling governmental object cannot itself establish the fit of every mechanism.

A mechanism rationally related in one setting cannot automatically establish an identical nexus in every setting.

- A school condition cannot itself define the full scope of school authority.
- A professional recommendation cannot itself become a mandate.
- A parental right cannot itself eliminate governmental police power.
- A police power cannot itself eliminate constitutionally protected liberty.

Each proposition supplies part of the legal structure.

The law becomes decidable when they are placed in order.

---

## XXV. THE FRAMEWORK IMPROVES RECIPROCITY AND JUDICIAL REVIEW

The same sequence should apply regardless of which party ultimately benefits from it.

- A parent invoking bodily integrity must identify the actual protected interest.
- Government invoking public health must identify the actual authority and object.
- A professional organization invoking expertise must identify the evidentiary basis of its recommendation.
- A challenger alleging informational defect must prove the defect.
- An agency invoking delegated authority must identify the delegation and follow the governing procedure.
- A court applying precedent must identify the proposition the precedent actually resolved.

That symmetry is paramount.

It prevents constitutional adjudication from turning on which party receives an initial presumption created by an undefined category.

The sequence instead requires each actor to establish the proposition for which that actor bears responsibility.

---

## XXVI. THE RECURRING LITIGATION DEMONSTRATES THAT THE MATTER IS NOT EXHAUSTED BY A SINGLE GENERAL PROPOSITION ABOUT VACCINATION

There is unquestionably substantial precedent recognizing state vaccination authority.

That proposition should be stated plainly.

The continuing federal litigation demonstrates that it does not answer every modern question concerning:

- professional information;
- federal recommendations;
- administrative alteration of recommendations;
- state reliance;
- religious exemptions;
- parental religious exercise;
- virtual education;
- special-education access;
- medical exemptions;
- individualized application;
- or the relationship between parental, institutional, and governmental authority.

*Miller* returned from the Supreme Court for reconsideration under newly articulated parental Free Exercise doctrine before the Second Circuit again affirmed.

*Perry* presents a materially different factual nexus and has proceeded toward Supreme Court review.

*CHD v. McDonald* demonstrates *Miller* already cascading into later district-court adjudication.

*Mahmoud*, *Mirabelli*, and *Foote* demonstrate simultaneous litigation concerning parent-school authority outside vaccination.

*Shaw*, *AAP v. Kennedy*, and *Arizona v. Kennedy* demonstrate simultaneous litigation concerning the informational and administrative predicates upstream from state coercive authority.

The proposition that vaccination can constitutionally be regulated is therefore established at a high level.

The allocation questions within particular contemporary systems continue to be litigated.

The framework offered here addresses those allocation questions.

---

## XXVII. THE COURT CAN USE THE FRAMEWORK WITHOUT DECIDING SCIENTIFIC QUESTIONS BEYOND THE RECORD

The framework respects institutional competence.

Courts adjudicate law.

Scientific questions properly established through the record remain matters of evidence.

The Court therefore need not become a medical board.

It need only identify where scientific evidence enters the constitutional sequence.

For example:

- If the question is whether vaccination advances prevention of a specified communicable disease, evidence addresses **Nexus**.
- If the question is whether one medical exemption criterion rests on accepted clinical judgment, evidence addresses **Expertise** and **Mechanism**.
- If the question is whether a professional organization accurately represented scientific literature, evidence addresses **Fidelity**.
- If the question is whether an agency possessed statutory authority to change a recommendation, law addresses **Authority** and administrative procedure.
- If the question is whether parents possess a protected interest in a particular decision, constitutional doctrine addresses **Authority**, **Custody**, and **Role**.

Separating these categories permits the Court to remain within its judicial role while still giving science its proper evidentiary force.

---

## XXVIII. THE COURT CAN LIKEWISE PRESERVE PUBLIC-HEALTH AUTHORITY WITHOUT TREATING IT AS SELF-EXECUTING

The State's public-health power is substantial.

It is also legal power.

Legal power becomes most durable when its source, object, and operation can be identified.

A governmental action that survives explicit classification is stronger than one sustained through categorical compression.

The framework therefore protects legitimate public-health authority from two opposite distortions.

It prevents constitutional liberty from being treated as though public health could never justify regulation.

And it prevents public health from being treated as a phrase capable of supplying every missing constitutional predicate.

The result is government whose authority can be located, explained, reviewed, and lawfully sustained.

---

## XXIX. THE THREE CHAINS ARE DISTINCT, INTERLOCKING, AND NON-SUBSTITUTABLE

The recurring litigation reveals three related forms of constitutional sequencing.

The first is informational:

> **Fidelity → Evidence → Expertise → Recommendation → Reliance.**

It asks whether the information relied upon accurately corresponds to the underlying evidence, whether that evidence supports expert interpretation, what recommendation follows, and who relies upon it.

The second is jurisdictional and relational:

> **Agency → Authority → Custody → Role.**

It asks who acts, who bears the consequence, who possesses decisional control over the relevant object, what legal authority each participant possesses, and in what capacity that authority operates.

The third is operational:

**Object → Mechanism → Nexus → Alternative → Consequence.**

It asks what end is pursued, what means are selected, how those means correspond to the asserted end in the circumstances presented, what alternatives are legally material, and what consequence follows from application or refusal.

The chains interact without collapsing.

- An informational defect may undermine Reliance without independently resolving Authority.
- Valid professional expertise may strongly support Reliance without itself creating governmental jurisdiction.
- Government may possess lawful Authority while relying upon an empirically defective predicate.
- A legitimate governmental Object may exist while the fit of a particular Mechanism or application remains disputed.
- A strong Nexus may justify one application while materially different circumstances produce a different constitutional question elsewhere.
- And a lawful general rule may still generate a distinct question concerning the Consequence imposed in a particular statutory or institutional setting.

The value of the architecture lies precisely in that independence.

It permits a court to identify the proposition actually contested without requiring every dispute elsewhere in the chain to be resolved simultaneously.

The resulting sequence can therefore be expressed as one integrated pathway:

**Fidelity → Evidence → Expertise → Recommendation → Reliance**
↓
**Agency → Authority → Custody → Role**
↓
**Object → Mechanism → Nexus → Alternative → Consequence**

Each line answers a different class of question.

Together they describe the pathway by which information becomes judgment, judgment becomes an exercise of lawful or unlawful authority, and authority becomes concrete consequence.

That pathway remains the same even where the substantive controversy changes.

---

## CONCLUSION

The constitutional controversies discussed in this brief do not ask the same question.

That is why they illuminate the same structural problem.

One challenges the integrity of professional representations.

Another challenges governmental alteration of professional recommendations.

Another concerns state reliance upon federal standards.

Others concern religion, educational access, disability, parental authority, institutional authority, unwanted medical intervention, or the relationship between a governmental object and the mechanism used to pursue it.

The law already contains doctrines addressing those questions.

The difficulty arises when distinct questions are collapsed.

The three sequences preserve their relationship without making them interchangeable:

**Fidelity → Evidence → Expertise → Recommendation → Reliance**

**Agency → Authority → Custody → Role**

**Object → Mechanism → Nexus → Alternative → Consequence**

The central distinctions follow.

**Scientific evidence may establish the factual justification for governmental or institutional action. It does not independently create the legal authority being exercised.**

**Lawful authority identifies who may act. It does not independently establish the truth, fit, or necessity of every empirical proposition invoked in its exercise.**

**A legitimate object does not itself establish every mechanism, application, or consequence selected to advance it.**

The architecture therefore permits courts to locate each controversy at the point where the actual legal dispute arises, apply the doctrine governing that point, and preserve adjacent questions without requiring them to be collapsed into a single constitutional category.

Amicus respectfully submits that this sequence supplies a common decisional architecture for the recurring questions presently appearing across the federal litigation described herein.

Respectfully submitted,

**Brandon Michael Hayes**
President, Natural Law Institute
159 Indian Hill Street
West Newbury, Massachusetts 01985
(617) 438-2049
brandon@hayeshaus.com

Dated: September 16, 2026

---

## CERTIFICATE OF CONFERRAL AND ADVANCE NOTICE

I certify that on September ___, 2026, I transmitted a complete copy of this **Motion for Leave to File and Proposed Brief of Amicus Curiae** by electronic mail to all counsel of record in this action.

The transmission provided counsel with advance notice of the proposed filing and an opportunity to state any position concerning leave to file at least twenty-four hours before the submission was expected to reach the Court.

Because the submission was thereafter placed in the United States mail for delivery to the Court, any position subsequently taken by a party does not alter the submission transmitted for filing. Any party wishing to state a position concerning the proposed amicus filing may present that position directly to the Court.

The electronic transmission described above was provided for purposes of conferral, contemporaneous notice, and delivery of a complete copy of the proposed filing to counsel of record.

I certify that the foregoing is true and correct.

Dated: September 16, 2026

**Brandon Michael Hayes**
President, Natural Law Institute
159 Indian Hill Street
West Newbury, Massachusetts 01985
(617) 438-2049
brandon@hayeshaus.com